## JACKSON V. BELL.

1.  In order to relieve a defendant from liability in an action for malicious prosecution, on the ground that he acted on the advice of counsel, it must appear that he made a full and complete statement of all the facts known to him relevant to the prosecution, and was afterwards advised to institute such prosecution, and that he acted on such advice of counsel in good faith, believing the plaintiff to be guilty of the crime with which he was charged.

2.  The question of probable cause is a mixed question of law and fact, and, when such a defense is alleged, and evidence has been offered in relation thereto, which is conflicting, its credibility is to be considered and determined by the jury, under proper instructions as to what facts, if they exist, constitute probable cause; as, when the defendant's belief of the facts relied on by plaintiff to prove a want of probable cause is essential, it is always a question of fact to be submitted to the jury for determination.

3.  The circumstances which merely tend to aggravate the ordinary damages which necessarily result from an alleged wrong as the natural consequences of the acts set out in the complaint for a malicious prosecution need not be specially pleaded, and, when evidence of injury to feelings has been admitted without objection, an instruction upon such evidence, to the effect that a person who has been charged with a crime, and prosecuted maliciously and without probable cause, may recover for personal mortification or injury to his feelings, is not erroneous.

(Syllabus by the Court.   Opinion filed April 13, 1894.)

Appeal from circuit court, Spink county.   Hon. A. W. CAMPBELL, Judge.

Action for malicious prosecution.   Judgment for plaintiff, and defendant appeals.   Affirmed.

The facts are stated in the opinion.

*A. B. Melville* and *F. S. McElherne*, for appellant.

From the evidence the court should have decided as a matter of law that there was probable cause for the arrest.   But if there were any facts to be decided upon conflicting evidence, the court should have submitted special findings and declared the law applicable thereto.   It was the province of the jury to determine whether the circumstances were true or not, and for the court to determine whether they amounted to probable cause or not.   2 Greenleaf Evidence, § 454; Bulkly v. Keteltas, 6 N. Y. 384.

When the court instructed the jury that "if they found as a fact that if the circumstances or things as they appeared from the defendant's point of view were such as would reasonably credit the belief in the mind of an impartial man that a crime had been committed, etc., that there would be probable cause," it left to the jury the duty of applying the law to the facts, which was clearly error.   It was further erroneous in this, that the court confused the question of malice with probable cause.   No matter how much malice there might have been upon the part of the defendant, if there was probable cause a non-suit should have been granted.   2 Greenleaf, Sec. 453; Costro v. DeUreste, 16 Fed. 93.

Where it is undisputed that the defendant consulted counsel and gave him correctly all the facts within his knowledge, and counsel advised the bringing of the action, the verdict should be for the defendant.   Emerson v. Cochran, 111 Pa. St. 622, 4 Atl. Rep. 498; Walter v. Sample, 25 Pa. S, 275; Bernar v. Dunlap, 94 Pa. St. 399; McCartha v. DeArinit, 99 Pa. St. 63.

*Sterling & Morris,* for respondent.

The charge of the court to the jury in this case upon the question of probable cause was in accordance with the rule laid down in the following cases:   Stewart v. Sonneborn, 98 U. S.

187; Acker v. Gundy, 12 Atl. L. Rep. 595; Castro v. DeUriarte, 16 Fed. 93; Burton v. Railroad Co., 22 N. W. 300.

In order that the advice of counsel may be of any avail as a defense in an action for malicious prosecution, it must appear that the defendant made a full and complete statement of all the facts known to him, or which he could, with reasonable diligence, have ascertained, and was afterwards advised to institute such prosecution and that he acted upon such advice of counsel in good faith. Manning v. Finn, 37 N. W. 314; Donnelly v. Daggett, 14 N. E. 161; Walke v. Camp, 27 N. W. 800.

Mental suffering is always laid down as one of the elements of actual or compensatory damage in malicious prosecution. Sutherland on Damages, 3 Vol. 704; Woods Mayne on Damages 559; Am. & Eng. Enc. Vol. 14, p. 71; Lombard v. Lennox, 28 N. E. 1125.

FULLER, J.   This action was instituted and prosecuted to judgment to recover $1,200 damages, alleged to have been sustained on account of a malicious prosecution of plaintiff before an examining magistrate upon a charge of grand larceny, growing out of the following facts as disclosed by the evidence. Plaintiff, who lives 100 rods from defendant's place of residence, discovered certain cattle, including one bull, upon his premises, and within his door yard, at milking time, on the morning of the 27th day of September, 1890; and, as such cattle were annoying and hooking certain cows which plaintiff kept tied to posts, he drove them into a shed near by, and confined them there. Plaintiff testified that he did not know whose cattle they were, and the evidence shows that he made diligent inquiry, and asked his neighbors if any of their cattle were gone, and told them about the cattle he had taken up. On the afternoon of the same day the defendant caused plaintiff's arrest on a charge of grand larceny of the cattle, and he was taken before an examining magistrate, who resided 14 miles from plaintiff's home. For the purpose of obtaining counsel, a continu-

ance of the hearing for a few days was obtained by plaintiff, and during such time he was, constructively at least, in the custody of the officer. The evidence shows that plaintiff, who was engaged in operating a threshing machine, was required to be absent from his business, and to lose time in preparing to defend against the charge of larceny, and that he incurred expense in employing counsel and in procuring the attendance of witnesses; and plaintiff testified that he spent about two weeks in attending to the matter, and was greatly mortified and injured in his feelings, by being placed under arrest and taken into the custody of the sheriff. Upon the day to which the hearing was continued the magistrate dismissed the case, and the defendant was discharged. The evidence offered on the part of the defendant shows that the cattle were placed in a corral on his premises the evening before they were taken up by plaintiff; that the fence around this yard or corral was composed of three wires, with posts sixteen feet apart; that on that evening just before retiring for the night, defendant made a careful examination, and found all the cattle in the yard, the fence in good condition, and the gates securely fastened; that in the morning four head of the cattle were gone, and the wire and stick by which one of the gates was fastened misplaced; that, after looking around the premises for the cattle, defendant sent a man who was in his employ up to the plaintiff's stable to see if the cattle were there; that when the man returned he informed defendant that the cattle were up there in an old shed. Plaintiff testified that he then went to an attorney at law, and stated the case fully and fairly, and was advised to do just what was done; that by causing the arrest of plaintiff he did not act maliciously, and believed that plaintiff had stolen the cattle. The testimony further shows that the identical cattle taken up by plaintiff had frequently escaped from defendant's pasture, and were at the time fastened together with ropes, to prevent them from doing so, although defendant testified that they had never gotten out of the yard in which they

were placed the evening before they were found in plaintiff's possession. It also appears from the record that the relations existing between plaintiff and defendant were, and for a number of years had been, unfriendly, and that the trouble between them prior to the arrest of plaintiff had resulted in more or less litigation. After testifying that he had put the ropes on the cattle to keep them from getting out of the pasture, the defendant was interrogated as follows: "Q. Were these breachy cattle? A. It was a poor fence. Q. These were more breachy than the others? A. I don't know. I had ropes on one of the cows. * * * I swore out the complaint for a search warrant. I did not know how to get the cattle otherwise. I left it to Mr. McElherne. I think I testified concerning this matter in a case at Mellette against me. Q. Did you state in your testimony in that case at Mellette that these cattle were in the habit of getting out, and that you had been experimenting with your fence there, by moving the wire up and down? A. I think I did. I think very likely it would be the same now that I experimented. I go every night to examine that fence, and walk around the yard regular,—clear around it. * * * As a matter of fact they never got out of that fence. They could not. The fence they got through was the pasture fence." There was a verdict for plaintiff, and judgment was entered thereon for $150, together with the costs of the suit. Defendant appeals, and asks for a reversal of the judgment.

The assignments of error relate to the court's charge to the jury, and it is urged by counsel for appellant that the court should have decided as a matter of law that there was probable cause for the arrest of plaintiff; and that it was error to submit certain special findings to the jury, which, with the answers, are as follows: "(1) Did the defendant fairly and fully submit to his attorneys all the facts known to him relative to the loss and taking of his cattle? Answer. No. (2) If you answer the first question, "No," what fact did he withhold? Answer. The fact that the cattle were breachy. (3) In swearing

out the warrant, did the defendant do so in good faith, relying
on the advice of counsel? Answer. No. (4) Was the advice
given by McElherne in reference to the case in good faith, with
knowledge of all the facts in the case? Answer. No." Coun-
sel for appellant contend that there was no evidence to sustain
the finding that the cattle were breachy, and that the court
erred in submitting that question to the jury; and also the
question of damages for injury to feelings, because the same
was not pleaded, and no evidence was offered upon the subject.
In this particular we cannot agree with the learned counsel.
As disclosed by the record, it appears that the cattle in ques-
tion had been a source of great annoyance to the defendant,
and that he had tied them together, to prevent their escape
from the pasture; and when, upon the witness stand, he was
specifically requested to state whether or not these particular
cattle were breachy, he evaded the question and declined to
give a responsive answer; which fact, together with the other
circumstances in the case bearing upon the question, including
his own evidence as to the precautions taken to keep the cattle
in the yard at night, was, in our opinion, proper to go to the
jury, and reasonably sufficient to justify the findings that the
cattle were breachy, and that the defendant was well aware of
the fact; and that by not disclosing it to his attorney at the
time the warrant for the arrest of plaintiff was issued he failed
to fairly, fully, and in good faith disclose to his attorney all
the facts within his knowledge bearing upon the question as to
the probability of the cattle having been stolen by plaintiff.
On cross-examination the plaintiff was asked the following
question: "You told this jury that, although you were arrested
September 27th, and discharged October 2d, you lost two weeks'
time. Explain. A. I lost that time. It broke me all up in my
feelings and in my work. When I said I lost two weeks' time,
I want the jury to understand that for those two weeks I was
broke up in my feelings." He further testified that every one
knew that he had been arrested, and he thought it made some

difference with his friends and neighbors. "A person who has been charged with a crime, and prosecuted maliciously and without probable cause, may recover for the expense to which he has been put, as well as for the injury to his feelings or personal mortification." 3 Suth. Dam. 704, 705; 14 Am. & Eng. Enc. Law, 71; Hamilton v. Smith, 39 Mich. 222. Although the complaint contains no specific allegation that plaintiff suffered damages by reason of injury to his feelings, it does state that he was arrested on a charge of grand larceny, and taken from his family and home, in the custody of the sheriff; and that the report of the alleged crime became generally known among the neighbors and friends of the plaintiff, and those with whom he transacted business, and injured his good name, credit, and reputation; and that in preparing to defend against the charge thus made he was required to spend much time, and to pay out and expend in costs, counsel fees, and in procuring the attendance of witnesses a large sum of money. And it appears to us that the ordinary and natural consequences of the acts set out in the complaint, and proved without objection on the trial, are sufficient to create, justify, and sustain a reasonable inference that such damages were sustained; and, in our opinion, it was not error to submit that question to the jury under the pleadings and proof. Manufacturing Co. v. Fields (Ind. Sup.) 36 N. E. 529; Lombard v. Lennox (Mass.) 28 N. E. 1125, and cases there cited. The circumstances which merely tend to aggravate the ordinary damages which necessarily result from the alleged wrong should not be pleaded. Baylies, Code Pl. 156; Solis v. Manning, 37 How. Pr. 13.

It is urged by appellant's counsel that the court left to the jury the duty of applying the law to the facts relating to the question of probable cause by giving the following instruction: "You have a right to take into consideration all the circumstances detailed by the evidence, such as the manner in which the stock was secured by the defendant in his yard, the places of, the distances between, the residences of plaintiff and de-

fendant, and the feeling existing between them as disclosed by the evidence, as well as the place where the stock was found; and if, after such consideration, you find as a fact that the circumstances of things, as they appeared from Mr. Bell's point of view, were such as would reasonably create a belief in the mind of an impartial, reasonable man that a crime had been committed by Mr. Jackson, then there would be probable cause for the defendant's acts, and he would not be liable. If such were not the facts, then there would be an absence of any probable cause, and the defendant would be liable for any damages thereby caused plaintiff; provided, further, that the prosecution was malicious." Concerning the protection offered a defendant in actions for malicious prosecution, who acts upon the advice of his attorney, the learned court instructed the jury as follows: "That when a party communicates to counsel in good standing all the facts bearing upon the guilt of the accused of which he has knowledge, or could have ascertained by reasonable diligence, and in good faith acts upon the advice of such counsel in prosecuting the party accused, he cannot be held responsible for malicious prosecution. * * * If you find that he has made such full and fair statement, and acted in good faith thereon, it is an absolute protection to him in this case. If he did not then the advice so obtained can avail him nothing." The attention of the jury was also called to all the particular facts and circumstances in the case, and they were asked to determine whether, from the defendant's standpoint, such facts and circumstances were sufficient to create a belief in his mind that a larceny had been committed, and that the plaintiff was in some manner connected therewith; and the jury was informed that; if such facts and circumstances did exist, and the defendant believed them, and acted thereon, a probable cause existed and the defendant was not liable for causing the arrest of the plaintiff. The question of probable cause is a mixed question of law and fact, and when such a defense is alleged, and evidence has been offered in relation thereto, its

credibility is to be considered and determined by the jury, under proper instructions as to what facts, if they exist, constitute or fail to constitute probable cause; and when, as in this case, the defendant's belief of the facts relied on by the plaintiff to prove a want of probable cause is essential, it is always a question of fact to be submitted to the jury for determination. Acker v. Gundy (Pa. Sup.) 12 Atl. 595; Stewart v. Sonneborn, 98 U. S. 187; Walker v. Camp (Iowa) 27 N. W. 800; Murry v. Long, 1 Wend. 140. In order to excuse a defendant from liability in a case of malicious prosecution on the ground that he acted on the advice of counsel, it must appear that he made a full and complete statement of all the facts known to him relevant to the prosecution and that he acted upon the advice so obtained in good faith, believing the plaintiff to be guilty of the crime with which he was charged. Manning v. Finn (Neb.) 37 N. W. 314; Donnelly v. Daggett (Mass.) 14 N. E. 161; Walker v. Camp, *supra.* The undisputed evidence shows that the cattle were breachy, and that defendant kept them tied together to prevent their escape from the pasture. This fact, under the circumstances, was very material, and the defendant must have known, or at least ought to have known, that such cattle would be more liable to escape from his enclosure than those that were not disposed to jump over or break through fences. It would scarcely occur to the defendant, and it is not reasonable to presume, that when he went to his corral, and found all but the breachy cattle safe within the fence, defendant had selected and stolen only those which were most disposed to break through or jump over the fences within which they had been placed. Upon the evidence in this case, and in response to specific interrogations, the jury found that the advice given defendant by his counsel was not based upon a knowledge of the facts and circumstances derived from a full and fair statement of all the material facts known to the defendant, and that the defendant did not disclose to his attorney the fact that the cattle claimed to have been stolen by the

plaintiff were breachy, and that the defendant did not cause the arrest of plaintiff in good faith, relying on the advice he had received from his attorney. These questions were properly submitted, and, in our opinion, correctly answered by the jury. We see no error in the record. The judgment is sustained by the evidence, and the same is affirmed.