ELLER, Respondent, v. LORD, Appellant.

(154 N. W. 816.)

(File No. 3734. Opinion filed November 19, 1915.    Rehearing denied January 6, 1916.)

1. **Seduction—Debauching Daughter—Non-acquaintance With Her Parents, as Defense.**

    It is no defense to a suit for enticing and debauching plaintiff's daughter, that defendant was unacquainted with her parents, and therefore did not knowingly interrupt the relations subsisting between her and them.

2. **Trial—New Trial—Seduction—Misconduct of Counsel, What Constitutes.**

    In a suit for damages for seduction of plaintiff's daughter, held, that statements of counsel complained of do not appear to have been so far improper or outside of the record as to constitute reversible error; one of the statements being "that this girl was taken from a house of prostitution and given to that good man Eugene Riley and his wife;" the evidence disclosing that the girl was taken, under writ of habeas corpus sued out by the father, from rooms in a building frequented by defendant and others, where conduct was shown of such nature that the characterization of the place by counsel was not wholly unjustified.

3. **Seduction—Evidence of Daughter's Change of Habits—Daughter's Statements—Hearsay.**

In a suit for enticing and debauching· plaintiff's daughter, held, that testimony of the parents tending to show that she, during her associations with defendant, had changed from a gentle, obedient, home-loving girl, who never used liquors or cigarettes, to one wholly different in habits, tastes, and desires, is relevant; and, while her statements to her parents, tending to show such changes, would not be competent evidence that defendant, and not another, had committed the acts charged, they are competent, as tending to show the daughter's then existing state of mind, and the said changes in habits, etc., and is not hearsay.

4. Damages—Seduction—Excessive Damages—Passion and Prejudice—Presumption—Reversal.

In a suit for damages for enticing away and debauching plaintiff's daughter, held, that a verdict for $25,000 damages will not be held excessive, since there is no rule for estimating such damages; and, where the record does not show that the jury were actuated by passion, prejudice, or improper influence, an appellate court will seldom interfere with a verdict for compensatory damages in such cases, unless all circumstances demonstrate that the jury so acted. Held, further, that the verdict will be presumed to be fair and reasonable, unless it is so excessive with reference to particular circumstances of the case as to demonstrate that the jury acted contrary to law given by the court, or have been influenced as stated.

5. Appeals—Error—Absence of Exceptions to Instructions—Presumption.

Where no exceptions were taken to instructions of trial court to jury, nor any refusal of court to give instructions requested by appellant, it is conclusively presumed that the court fully, fairly and correctly instructed as to damages.

6. Damages—Seduction—Punitive Damages, Failure to Allege—Compensatory Damages, Embrace What—Judicial Discretion.

In a suit for damages for seduction of plaintiff's daughter, held, that, although punitive damages were not plead, yet compensatory damages may include those resulting from humiliation, disgrace, and mental suffering attendant upon such injury; that such suffering is properly the subject of such compensatory damages, which are largely within discretion of the jury under proper instructions by the court.

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by O. W. Eller, against Warren A. Lord, for damages for seduction. From a judgment for plaintiff, and form an order denying a new trial, defendant appeals. Affirmed.

*Joe Kirby,* and *G. J. Danforth,* for Appellant.

*Geo. W. Egan,* for Respondent.

(2) To point two of the opinion, Appellant cited: Bullard v. Boston & M. R. R. Co., 5 Atl. 838; Brown v. Swineford, 44 Wis. 282; Henry v. Sioux City & Pac. R. R. Co., 30 N. W. 630; Ausland v. Parker, 14 S. D. 273.

Respondent cited: L. & N. Ry. Co. v. Sullivan Timber Co., 126 Ala. 95, 27 So. 761; Kimball Bros. v. Deere, Wells & Co., 108 Iowa, 676, 77 N. W. 1041; Chicago & Alton Ry. Co. v. Jackson, 116 Ill. 206, 4 N. E. 381; Gutman v. Klinck, 133 N. W. 475.

(3) To point three of the opinion, Appellant cited: Wendt v. C., St. P., M. & O. Ry. Co., 4 S. D. 476.

(4) To point four of the opinion, Appellant cited: McCarthy v. Heryford, 175 Fed. 46, 13 Cyc. 123; Cherokee Packet Co. v. Hilson, 31 S. W. 736; Covington & C. Bridge Co. v. Goodnight, 60 S. W. 415; Chitty v. St. L. I. M. & S. Ry. Co., 49 S. W. 871; 13 Cyc., pp. 122-124.

Respondent cited: Daisley v. Dunn, 107 Fed. 218; Beaudrot v. Southern Ry. Co., 48 S. E. 106; Brown v. Memphis & Charleston Ry. Co., 7 Fed. 51; Fullerton v. Fordyce, 144 Mo. 519, 44 S. W. 1053; Mahar v. Central Park etc. Ry. Co., 67 N. Y.　　　　; Vol. 13 Cyc. p. 121.

SMITH, J. Action for enticing and debauching plaintiff's 15 year old daughter. Jury trial and verdict for plaintiff for $25,000 damages. Appeal from the judgment and an order overruling motion for a new trial. Appellant groups and discusses numerous assignments of error under four heads, viz.: (1) Insufficiency of the evidence to justify the verdict; (2) misconduct of counsel; (3) excessive damages; (4) errors in the admission of evidence. Appellant contends that there is no evidence tending to show that palintiff's minor daughter was abducted or seduced and debauched by defendant.

[1] We have examined the entire evidence in the record with much care, and are fully convinced that it is amply sufficient to sustain the verdict as to persuasion, enticements, inducements by defendant to the girl to visit and remain at rooms frequented by defendant in the Temple Court building, and to sustain a finding that the girl was seduced and debauched by defendant. Appellant's contention that he was unacquainted with the parents of the

girl, and therefore did not knowingly and wittingly interrupt the relationship subsisting between her and her parents, is unworthy of serious consideration.

A complete statement of the evidence would permanently incumber the records of the court with details of a story which could only minister to salacious minds, and is not necessary in the application of any rule or principle of law. We shall not attempt to state it further than seems necessary.

[2] We have also carefully considered the alleged misconduct of counsel. A separate discussion of the three remarks of counsel alleged to constitute prejudicial error would involve a review of much of the evidence and proceedings at the trial. The statements do not appear to have been so far improper or outside the record as to constitute reversible error. One of the statements was— "that this girl was taken from a house of prostitution and given to that good man Eugene Riley and his wife," etc.

The evidence discloses that the girl was taken, under a writ of habeas corpus sued out by her father, the plaintiff, from rooms in the Temple Court building frequented by defendant and others, where conduct was shown of such a nature that the characterization of the place by counsel was not wholly unjustified. Kimball Bros. v. Deere W. & Co., 108 Iowa, 676, 77 N. W. 1041.

[3] Appellant assigns errors in the admission of certain evidence. The father and mother testified, in substance, that before her association with defendant, Leone was always obedient and gentle in disposition, "a good little home-loving child," lived with the family, did housekeeping and getting the meals for the family; did not go out often, perhaps once or twice a week, and was always home by 10 o'clock; that about the time of beginning her association with defendant she got to going out by degrees until she was out every night; that prior to that time she had never expressed any desire for liquor or to use cigarettes, and had never used either. The evidence conclusively shows that intoxicating liquors and cigarettes were given her at the rooms in Temple Court on various occasions; that she was given suppers there, drank intoxicating liquors, and smoked cigarettes; that the defendant was present on these occasions. An older sister of Leone who accompanied her on some of these visits, testified that they had beer, whisky, and wine; that suppers, drinks, and cigarettes

were furnished by defendant; that she saw him hug and kiss Leone and give her all kinds of drinks, and give her money, and heard him ask her to come up there again. The defendant himself testified that these rooms were rented and occupied by Mr. and Mrs. Thompson; that they kept and used intoxicating liquors; that he was at these rooms on various occasions and saw the Eller girls, the Stickney girls, and others; that there were two or three whom he did not know, and that he usually tried to make himself agreeable to anybody; denied that he himself ever furnished suppers, drinks, or cigarettes, or ever hugged or kissed Leone.

The Thompsons were not called as witnesses. Leone herself, apparently an unwilling witness, testified that the defendant made an indecent proposal to her once; that she slept in the apartments; that he tried to fondle and kiss her; that once or twice when she was in bed he came and kissed her good night; that Mrs. Thompson was always present at these times; that defendant gave her candy, some money, and a stick pin. Much of this testimony is denied by defendant, but that fact is not material to a consideration of the competency and materiality of the evidence excepted to. It need only be borne in mind that the evidence above epitomized and that of other witnesses to whom we have not referred, tending to corroborate it in certain particulars, was before the court, and it is in the light of all the circumstances that the competency and materiality of that part of the evidence objected to by appellant must be examined.

The father and mother of Leone were permitted, over proper objections, to testify, in substance, that after the commencement of her association with defendant, Leone became obdurate and refused to do anything she was told, and threatened and told plaintiff that if she had to stay home and work she had other places to go that were a great deal better than home; would say she liked liquor and wanted some; thought it was good for anybody; that she would smoke cigarettes if she wanted to, and would get them when she had the money; that her parents ought to keep liquor in the house—that everybody else does that is anybody—that she did not have to do things she was told; that she did not want to be the slave of the family; that she had been promised other things and could have other things; that she would go away and leave

the breakfast dishes on the table, and would bring in the food only about half cooked; that she was always togged out and her face rouged ready to start out again. That such evidence was competent as tending to show the then existing state of the girl's mind, the change in tastes, habits and desires, cannot be doubted. Such changes evidence the moral deterioration, the extent of the injury sustained by her by reason of alleged vicious and immoral acts and associations. For these results the jury have said the defendant was responsible, and their verdict is amply sustained by the evidence. Appellant's contention is that such statements by the girl and her parents were hearsay and not competent evidence. It is plain, of course, that such statements would not be competent evidence of the fact that the defendant had committed the act charged, viz., that he and not another had enticed, seduced, and debauched the plaintiff's minor daughter. And in fact the statements complained of are not in themselves evidentiary of such facts. That the girl had acquired a taste for intoxicating liquors and cigarettes; that she had other places to go better suited to her present tastes and habits than her home; that she had been promised other things and could get other things—were not in themselves declarations that the defendant was the person who had taught her the use of intoxicating liquors and cigarettes, or had promised her a place better suited to her tastes and habits than her home, or had promised her other things. It is immaterial whether or not, in the case in hand—"an assertive or testimonial use might be improperly made by the jury; the judge's instructions are the corrective against this." Wigmore on Evidence, §1790.

No complaint is made that the instructions did not fully safeguard appellant's rights. Certainly the fact that this 15 year old girl, during the period of her association with defendant, had changed in a few months from a gentle, obedient, home-loving girl, who had never used liquors or cigarettes, to one wholly different in habits, tastes, and desires, was relevant to the issues before the court and jury. Her habits, tastes, and mental attitude immediately before and after her association with defendant were proper facts to be considered and investigated under such issues. Her statements, so far as they tended to disclose these matters, were made at a time and under circumstances which do not dis-

close any motive on her part for deception, and the competency of such evidence is abundantly sustained by the authorities. The principles involved are very fully discussed and the authorities cited by Mr. Wigmore in his admirable work on Evidence, §1714 et seq.

[4-6] We have considered with much care the assignments relating to excessive damages. Appellant's argument upon this branch of the case is founded largely upon the assumption that the evidence is insufficient to sustain a verdict for enticing and debauching plaintiff's minor daughter. With this assumption we cannot agree. We regard the evidence sufficient to sustain such a verdict. Appellant contends that because punitive damages are not claimed in the pleadings, plaintiff's recovery must be confined to compensatory damages. It is conceded, however, that compensatory damages may include damages resulting from humiliation, disgrace, and mental suffering attendant upon such an injury. Aside from certain remarks of respondent's counsel addressed to the jury at the trial, which we have already referred to, and which were not wholly unwarranted by the evidence, we find nothing whatever in the record tending to show that the jury were actuated by passion, prejudice, or any improper motive in fixing the amount of plaintiff's damages.

No exceptions are presented in the record to the instructions given by the court, nor to any refusal of the court to give instructions requested by appellant at the trial. It must therefore be conclusively presumed that the court fully, fairly, and correctly instructed the jury as to damages properly recoverable in the action. Upon the motion for a new trial, the trial court was called upon to consider and determine upon the evidence, and upon all the facts and circumstances attending the trial, whether or not the verdict was excessive, and whether the jury acted fairly and impartially, and followed the instructions of the court, or whether they were actuated by passion or prejudice.

In the case of Daisley v. Dun (C. C.) 107 Fed. 218, upon a motion for new trial alleging excessive damages, that court held that, in an action for libel, where the court has no rules for estimating damages, it ought not to set aside the verdict, although of the impression it would not of itself have awarded so large an amount if, after full consideration, it is conscious that its mind

wavers on the question whether or not the damages found by the jury are excessive. The general rule as stated by Judge Story is:

"That a verdict will not be set aside in a case of tort for excessive damages, unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law, by which the damages are to be regulated." Whipple v. Cumberland Mfg. Co., 29 Fed. Cas. No. 17,516.

The verdict will be presumed to be fair and reasonable, unless it is so excessive with reference to the particular circumstances of the case as to demonstrate that the jury have acted contrary to the rules of law given them · by the court, or have been influenced by passion, prejudice, or a perverse disregard of justice. However excessive the verdict may appear to appellant's counsel, this court, upon the record before it, cannot say that the jury did commit a gross or palpable error, or acted under improper bias, influence, or prejudice, or had mistaken rules of law given them by the instructions by which damages should have been regulated. In Treanor v. Donahus, 9 Cush. (Mass.) 229, Chief Justice Shaw says "the cases of libel and slander, seduction, and the like, are analogous in this: That, in general, they do not involve a loss of money, time, or business capable of being measured and estimated, but are founded on damages done to one's feelings, reputation, social position, hope of advancement, and the like. These are damages not measurable by any standard, but capable, in many instances, of producing the severest suffering, yet, in others, cause little or no actual injury."

In Magee v. Holland, 27 N. J. Law, 86, 72 Am. Dec. 341, the court says:

"The action for debauching and seducing · a daughter is the most ordinary action by a parent for an injury to his child, and the remedy in this case has been carried as far, if not farther, than in any other. Loss of service is held in all cases to be an indispensable condition upon which the action must be maintained. * * *

"Besides the loss of service and the actual and necessary expenses of pursuit, the jury · were instructed that they had a right

to compensate the plaintiff, so far as damages could compensate, for the injury done to his feelings." .

In Washburn v. Abrams, 122 Ky. 53, 90 S. W. 997, it is held that in this class of cases parents may recover damages for mental distress in the loss of companionship of the child.

Without further citations, it may be said that the authorities hold, with practical unanimity, that mental suffering resulting from such a wrongful injury to a child, and from the disgrace attending it, is properly the subject of compensatory damages which are largely within the discretion of the jury under proper instructions by the court, and that an appellate court will seldom interfere with a verdict in such cases, unless all the circumstances demonstrate that the jury have acted under some improper influence, bias, or prejudice.

Upon the record before us we are unable to say that the jury in rendering this verdict were actuated by passion, prejudice, or improper influence, and we cannot disturb it. The judgment and order of the trial court are in all things affirmed.